# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

**Donnie R. Partain**                                                                          **Plaintiff**

**v.**                              **CASE NO. 4:13CV000168 JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                              **Defendant**

## <u>ORDER AFFIRMING THE COMMISSIONER</u>

Donnie R. Partain seeks judicial review of the denial of his application for disability insurance benefits (DIB) and supplemental security income (SSI). Partain last worked in August of 2007 as a construction laborer.[1] Partain applied for DIB and SSI on May 15, 2008, with an alleged onset date of August 30, 2007.[2] Partain's date last insured is December 31, 2011.[3] Partain bases disability on degenerative disc disease.[4]

**The Commissioner's decision.** The Commissioner's ALJ determined that Partain did not engage in substantial gainful activity during the period from the alleged onset date to the date last insured.[5] Partain has severe impairments - mild osteoarthritis and scoliosis of the thoracolumbar spine; hypertension; degenerative joint disease of the right foot; history of right rotator cuff tendinitis and impingement; history of left femur fracture status post closed reduction and pinning; history of left foot fracture; mood disorder/major depressive disorder/depressive disorder, not otherwise specified; pain disorder; psychological factors

---

[1]SSA record at p. 217.

[2]*Id.* at pp. 159 & 163.

[3]*Id.* at p. 205.

[4]*Id.* at p. 209.

[5]*Id.* at p. 10.

affecting physical condition; and marijuana abuse/dependence in reported remission.[6] None of

Partain's severe impairments meet the Listings, and Partain can perform sedentary work except

he can only occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can

only occasionally balance, stoop, kneel, crouch and crawl; is unable to perform overhead work;

must avoid extreme cold and hazards including no driving as part of work; and can perform work

where interpersonal contact is incidental to the work performed, the complexity of tasks is

learned and performed by rote, with few variables and use of little judgment, and the supervision

required is simple, direct and concrete.[7] The ALJ held that Partain cannot perform any past

relevant work,[8] but can perform the positions of production assembler, machine tender and hand

packer, positions identified by the vocational expert (VE) as available in the state and national

economies.[9] Partain's application was denied.[10]

After the Commissioner's Appeals Council denied a request for review, the ALJ's

decision became a final decision for judicial review.[11] Partain filed this case to challenge the

decision. In reviewing the decision, the Court must determine whether substantial evidence

---

[6]*Id.* at p. 11.

[7]*Id.* at pp. 11-12.

[8]*Id.* at p. 17.

[9]*Id.* at p. 18.

[10]*Id.* at p. 19.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

supports the decision and whether the ALJ made a legal error.[12]

**Partain's allegations.** Partain maintains that (1) the ALJ failed to fully and fairly develop the record; (2) the ALJ erred in the step-two severity analysis; (3) the ALJ erred in determining that none of Partain's severe impairments meet the Listings; (4) the ALJ erred in the credibility analysis; (5) the RFC is not supported by substantial evidence; and (6) the ALJ erred in relying on the VE testimony. These arguments are not persuasive. The ALJ's decision is supported by substantial evidence and no legal error occurred.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[13] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the determination that Partain is not disabled.[14]

**Development of the record.** Partain maintains that the ALJ failed to fully and fairly develop the record because: (1) he did not discuss the sit/stand option that was assessed in the first unfavorable decision; and (2) he did not obtain additional medical reports concerning the level of work activity Partain can sustain without shifting position. These arguments are not persuasive.

---

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[13]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[14]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

In the first unfavorable decision, an ALJ assessed a sit/stand option in the RFC determination.[15] The decision failed to identify the frequency with which the claimant would need to exercise the sit/stand option. The Appeals Council remanded the decision, instructing the ALJ to consider the frequency of the sit/stand option, obtain updated medical records and further consider Partain's maximum RFC.[16] The ALJ complied with the remand instructions by obtaining voluminous additional treatment notes and medical assessments. A second hearing was held, and the ALJ subsequently made a finding with respect to Partain's maximum RFC. In excluding discussion of a sit/stand option, the ALJ implicitly rejected such an assessment. Therefore, no further development with respect to a sit/stand option was required.

Partain additionally argues that the ALJ erred because he did not obtain additional medical records with respect to Partain's alleged need to shift positions while working. "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work."[17] The record is replete with treatment records, diagnostic reports, and assessments by medical professionals. There was enough evidence for the ALJ to determine the impact of Partain's impairment on his ability to work.

**Severity analysis.** Partain asks the Court to remand this case, in part, because the ALJ did not characterize his shoulder injury as a severe impairment. This argument provides no basis for relief because step two directs a conclusion of "not disabled" if the claimant fails to prove a

---

[15]SSA record at p. 76.

[16]*Id.* at pp. 88-89.

[17]*Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012).

severe impairment such that the process weeds out claimants whose abilities to work are not significantly limited.[18] If the claimant meets his step-two burden, there can be no reversible error where the record shows the ALJ considered all of the medical evidence and all of the claimant's impairments. Partain met his burden to show a severe impairment, so his application proceeded to step three. The record shows the ALJ considered all of the medical evidence and all of Partain's impairments.

Further, the ALJ found that Partain's history of right rotator cuff tendinitis and impingement is a severe impairment. Partain seems to argue that this is not the severe impairment. Rather, according to Partain, the severe impairment is the *effects* of the history of right rotator cuff tendinitis and impingement. Certainly when the ALJ determined that the history of right rotator cuff tendinitis and impingement constitutes a severe impairment he was considering the effects of this impairment. This Court, however, has no desire to argue semantics. As established above, even if the ALJ erred in not finding the "effects" severe, no harm resulted from this finding because Partain proceeded to the third step.[19]

**The Listings.** Partain maintains that the ALJ committed error at step three of the analysis because he did not discuss whether Partain's physical impairments meet any listings. Although he did not specifically address each severe impairment with respect to the Listings, the ALJ

---

[18]*See Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (explaining that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

[19]Partain makes an additional argument that because the ALJ's step-two determination consists of one sentence, automatic reversal is required. For support he cites to *Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007). *Nicola* requires that a diagnosis of borderline intellectual functioning be considered severe. It is therefore inapplicable to the instant case.

determined that Partain's "medical records were not attended with the specific clinical signs and diagnostic findings required to meet or equal any of the requirements set forth in the Listings of Impairments . . . ."[20] The ALJ considered whether Partain's physical impairments met any of the Listings. Further, in his brief, Partain does not present any evidence to support a finding that his physical impairments meet any of the Listings. It is Partain's burden to prove that his conditions meet or equal all of the specified medical criteria in a listing.[21] He has not met that burden. His argument is not persuasive.

**Credibility.** According to Partain, the ALJ's credibility analysis is flawed because he failed to address the side effects Partain experiences as a result of taking psychotropic medications, specifically Haldol. Contrary to what Partain asserts, however, the ALJ did take into account the side effects Partain allegedly suffers from. The ALJ noted that Partain "reported grogginess as an adverse side effect to medications."[22] The ALJ reviewed notes from physicians that addressed Partain's response to psychotropic medications.[23] Additionally, to evaluate Partain's credibility, the ALJ followed the required two-step process and considered the required factors.[24] No error was committed with respect to the ALJ's credibility determination.

**RFC determination.** Partain argues that the RFC determination is not supported by substantial evidence because the ALJ gave only "little weight" to one of Partain's treating

---

[20]SSA record at p. 11.

[21]*See McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011).

[22]SSA record at p. 13.

[23]*Id.* at pp. 14-15.

[24]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

physicians. This argument is not persuasive. Although the opinion of a treating physician is usually granted controlling weight, "an ALJ may grant less weight . . . when that opinion conflicts with other substantial medical evidence contained within the record."[25] This is the situation in the instant case.

The record contains five treatment notes from Partain's treating psychiatrist.[26] In the notes, the treating psychiatrist acknowledged that Partain was appealing his disability and stated that "Although it's conceivable that a job with relatively low stress, part time, and with minimal interactions would be doable by the patient, he will probably have a hard time maintaining employment, given his past history."[27] The ALJ did not give this statement probative weight, noting that the issue of "disability" is reserved for the Commissioner. The ALJ also referenced the findings of one state consultative examiner that Partain showed signs of malingering/exaggerating. Based on this assessment, the remainder of the treating psychiatrist's opinion was given little weight because the ALJ determined that the treating psychiatrist's opinion was based on Partain's self-reported symptoms, symptoms that were likely exaggerated or the result of malingering.

The ALJ is correct that the issue of disability is determined solely by the Commissioner. Further, as the ALJ pointed out, in a December 2011, neuropsychological evaluation a state consultative examiner observed that Partain showed signs of malingering/exaggerating during

---

[25]*Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).

[26]SSA record at pp. 683, 727-728 & 760-761.

[27]*Id.* at p. 761.

the evaluation.[28] The record, however, provides even greater support for the ALJ's decision to attribute little weight to the opinion of Partain's treating psychiatrist. The treating psychiatrist's opinion is inconsistent with his own treatment notes. In March 2011, Partain's psychiatrist noted that Partain was "definitely better on this medication," "definitely in a better mood than he has been in the past," "seems less guarded and generally more cooperative and open than before," and "doesn't get nearly as angry or as frequently angry, and . . . feels more sociable."[29] The psychiatrist further noted that "it's rather remarkable that he's responded to this low dose of haloperidol and/or lithium."[30] In September 2011, the same psychiatrist observed that Partain "continues to benefit substantially from the haloperidol and lithium," and "[is] considerably more spontaneous in his conversation with the examiner and his outlook is generally more positive."[31] The psychiatrist also noted that Partain "offer[ed] to shake the examiner's hand at the end of the consultation and expresse[d] his appreciation, which is a definite positive for him."[32]

The diagnostic reports provide further support for the ALJ's determination to give the treating psychiatrist's opinion little weight. In a May 2010, Mental Diagnostic Evaluation a state consultative examiner observed that Partain appeared pleasant, relaxed and cooperative.[33] His "responses were logical and relevant" and "his associations were well connected and goal

---

[28]*Id.* at pp. 765-768.

[29]*Id.* at p. 727.

[30]*Id.*

[31]*Id.* at p. 761.

[32]*Id.*

[33]*Id.* at p. 508.

directed."[34] Although Partain was hospitalized one time in the past for suicidal ideation, he

denied any suicidal thoughts during the evaluation.[35] The examiner further noted that Partain

"appeared lucid" and "did not evidence psychotic process."[36]  Partain "was oriented to time,

place and person" and was "responsive, pleasant and talkative throughout the session."[37] The

examiner diagnosed Partain with major depression without psychotic features, pain disorder and

marijuana abuse.[38] In describing the effects of the diagnoses, although the examiner noted

possible mild to moderate impairments in concentration and the ability to complete tasks within

acceptable time frames, he further observed that Partain

> was pleasant and rapport was rapidly gained. He did not appear to be impaired in
> his ability to communicate and interact in a socially adequate manner. He did not
> appear to be impaired in his ability to communicate in an intelligible and effective
> manner. [He] seemed capable of comprehending and/or carrying simple and
> complex tasks. He did not demonstrate limitation in his ability to perform work
> like tasks. . . . He attended to tasks and seemed to tolerate frustration. He does not
> appear to be impaired in his ability to sustain persistence when completing
> tasks.[39]

A Mental Residual Functional Capacity Assessment was completed in June 2010.[40] In the

assessment, the examiner concluded that Partain

> appears to be responding to treatment, and if he continues to not use marijuana,

---

[34]*Id.*

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Id.* at p. 509.

[39]*Id.*

[40]*Id.* at p. 524.

the medical evidence indicate[s] he will be able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled).[41]

This assessment was affirmed by a second state agency physician.[42]

In the December 2011, Neuropsychological Evaluation referenced above, Partain was administered multiple psychological tests.[43] The state examiner, however, determined that Partain malingered/exaggerated during the testing.[44] Therefore, he found that the results of the tests were not accurate.[45] The examiner further determined that Partain can communicate and interact in a socially adequate and effective manner, cope with the cognitive demands of work-like tasks, and has the cognitive ability for unskilled work-like tasks.[46] Additionally, the examiner found that Partain can attend and sustain concentration on unskilled work-like tasks, sustain persistence in completing work-like tasks and complete work-like tasks in an acceptable timeframe if physically able to do so.[47]

A reasonable mind would find this evidence adequate to support the assignment of little, or non-probative, weight to the opinion of Partain's treating psychiatrist. This determination is supported by substantial evidence.

---

[41]*Id.* at p. 527.

[42]*Id.* at p. 548.

[43]*Id.* at pp. 762-770.

[44]*Id.* at pp. 765-768.

[45]*Id.*

[46]*Id.* at p. 768.

[47]*Id.*

**VE testimony.** Partain's final argument concerns the ALJ's reliance on the testimony of the VE regarding positions available to Partain. As stated above, the VE testified that Partain can perform the positions of production assembler, machine tender and hand packer, positions available in the state and national economies.[48] Partain asserts that the number of jobs available for each position are not significant, as required under 20 CFR §§ 404.1560(c) and 416.960(c). Partain additionally argues that the positions identified by the VE conflict with the Dictionary of Occupational Titles (DOT), and the VE failed to reconcile the conflicts. According to Partain, these errors prevent the ALJ from relying on the VE's testimony.

The VE identified 368, 224 and 197 jobs in Arkansas for the positions of production assembler, machine tender and hand packer, respectively. There are 27,800; 19,886; and 21,485 jobs available for each position nationwide. Partain cites to *Jenkins v. Bowen*[49] to support his argument that the number of positions identified is not significant. In *Jenkins*, the Eighth Circuit determined that 500 statewide jobs were numerous enough to represent a significant number.[50] The fact that the Court determined that 500 statewide jobs represent a significant number does not mean that any number lower is insignificant. Indeed, in *Johnson v. Chater*, the Eighth Circuit determined that 200 jobs in the local economy and 10,000 in the national economy were significant.[51] In a subsequent case involving the same issue, the Eighth Circuit stated, "We ultimately leave to the trial judge's common sense the application of the significant numbers

---

[48]*Id.* at p. 18.

[49]*Jenkins v. Bowen*, 861 F.2d 1083 (8th Cir. 1988).

[50]SSA record at p. 1087.

[51]*Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997).

requirement to a particular claimant's factual situation."[52] Therefore, the question is whether the ALJ's determination that these positions existed in "significant numbers" is supported by substantial evidence, and the answer is "yes." The VE identified three separate jobs that Partain is capable of performing with the assigned RFC. Together these jobs number 789 positions available in the state and 69,151 positions available nationwide. This constitutes substantial evidence.

Partain further alleges that the VE's testimony was in conflict with the DOT. Specifically, Partain maintains that the position of bench assembler, optical, a production assembly position, requires frequent reaching. Therefore, the VE's testimony that Partain can perform this job is in conflict with the DOT. The DOT, however, says nothing about frequent reaching in its description of this position. With respect to the hand packer position, Partain argues that the VE failed to reconcile the fact that the DOT classifies this job at a medium exertional level. Additionally, the position is classified as General Educational Development (GED) R2, which Partain maintains conflicts with the RFC. The VE successfully reconciled the conflict between the DOT and her testimony that Partain can perform the position of hand packer. According to the VE, an additional employment publication, *U.S. Publishing*, identifies sedentary handpacker positions.[53] GED R2 requires an individual to "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "Deal with problems involving a few concrete variables in or from standardized situations."[54] As testified to

---

[52]*Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997).

[53]SSA record at p. 816.

[54]Dictionary of Occupational Titles, 4th Edition, Appendix C, III.

by the VE, this requirement does not conflict with the RFC assessed by the ALJ. Furthermore, even if a conflict existed, the error was harmless because the VE identified two additional positions that Partain can perform.

The VE testimony was appropriately relied upon. No error was committed.

**Conclusion.** Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the court DENIES Partain's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 31st day of October, 2014.

_____
UNITED STATES MAGISTRATE JUDGE